**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO. A-11-CR-457 LY** |
| | § | |
| **JEDEDIAH W. REGENWETHER** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b), 18 U.S.C. § 3401(i), and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

The Court conducted a hearing on April 17, 2013, and heard evidence and arguments from all of the parties with regard to the U.S. Probation Office's Petition seeking to revoke the Defendant's term of supervised release.

## I. PROCEDURAL BACKGROUND

On January 11, 2005, Judge Mark Bennett of the Northern District of Iowa, sentenced the Defendant to a total of 135 months in prison, and three years of supervised release, for multiple bank robberies (Counts 1 and 3 - Aiding and Abetting Attempted Bank Robbery, in violation of 18 U.S.C. § 2113(a); Counts 2 and 4: Solicitation to Commit Crime of Violence, in violation of 18 U .S.C. § 373(a); and Count 5: Conspiracy to Commit Bank Robbery, in violation of 18 U.S.C. § 371). The Defendant was released from the Bureau of Prisons and began supervision on September 21, 2011.

Immediately prior to releasing from the BOP, the Defendant's supervision was transferred to this district, presumably because he planned to relocate to Austin after being released. The Defendant's initial adjustment to supervision went well, as he found both a stable residence and employment. The only issue, prior to this matter, that had been called to the Court's attention was the Defendant's admission to having used methamphetamine in May 2012. At that time the Probation Office notified the Court of this, and recommended that the Defendant be continued on supervision with more intensive treatment for substance abuse, a recommendation that the Court adopted.

The current violations alleged are two. First, on March 15, 2013, the Defendant submitted a urine sample that tested positive for both marijuana and amphetamines. The Defendant admitted at that time that he had used marijuana, but denied use of any amphetamines. Then, a week later, on March 22, 2013, the Defendant was arrested for DWI, after he drove around two APD vehicles that were blocking a section of North IH-35 due to a recent accident with debris in the roadway. After ignoring the officers' commands to stop, and driving around them, the Defendant was stopped, and after failing a field sobriety test, was arrested and charged with DWI. He refused to take either a breathalyzer or a blood test, though he did blow into a handheld field breathalyzer, which returned a .153 blood alcohol content. On the trip to the jail, the defendant repeatedly banged his head against the partition between the front and back seats in the patrol car. The DWI charge remains pending in Travis County.

Based on the above, on April 1, 2013, the Probation Office submitted its petition and on April 3, 2013, the undersigned authorized the issuance of a warrant. The Defendant was arrested on the warrant on April 11, 2013.

2

Between the arrest and the hearing, in briefings with the Probation Officer, the Court was informed that the Defendant appeared to be working at CarMax, which he had not disclosed to the Probation Office, and to be driving a vehicle that was different from that which he had disclosed to the Probation Office. When confronted with this at the hearing, the Defendant admitted that he had not informed his Probation Officer of his CarMax job, because he was afraid that if CarMax learned of his prior convictions. it would fire him. He stated that he was doing well at the CarMax job and that he had taken on the additional job to assist him with making $700 per month child support payments.

On April 17, 2013, the Defendant and his attorney appeared before the undersigned Magistrate Judge. On the same date, the Defendant and his attorney signed a Consent to Allocution Before United States Magistrate Judge. Pursuant to 28 U.S.C. Section 636(a) and 18 U.S.C. § 3401(i), the Court held a Supervised Release Revocation Hearing, at which time the Defendant pleaded "TRUE" to the charges against him.

## II. FINDINGS OF THE COURT

1.      The Defendant was competent to make the decision to plead true to the petition.

2.      The Defendant had both a factual and rational understanding of the proceedings against him.

3.      The Defendant does not suffer from any physical or mental impairment that would affect his ability to fully understand the charges against him or the consequences of his plea.

4.      The Defendant has not had any injury that would affect his judgment in pleading true or that would affect his understanding of the basis, consequences, or effect of his plea.

5.      The Defendant was sane and mentally competent to stand trial for these proceedings.

6.      The Defendant was mentally competent to assist his attorney in the preparation and conduct of his defense.

7.      The Defendant received a copy of the Petition naming him, and he read it.

8.      The Defendant understood the Petition and the charges against him, and had the opportunity to discuss the Petition and charges with his attorney.

9.      The Defendant understood that he had the right to present evidence and to cross-examine witnesses at the hearing, and waived that right.

10.     The Government, without objection from the Defendant, gave a summary of the evidence against the Defendant.

11.     The plea of true was freely, intelligently, and voluntarily made by the Defendant.

12.     The Defendant understood all of his statutory and constitutional rights and desired to waive them.

13.     The Defendant voluntarily gave consent to allocute before the United States Magistrate Court.

14.     The Defendant violated conditions of his supervised release by: (1) testing positive for the use of controlled substances; and (2) committing the state law offense of DWI, a Class B misdemeanor.

## III.  RECOMMENDATION

The Court has carefully considered all of the arguments and the evidence presented by the Government and the Defendant, and has taken into account the policy statements in Chapter Seven of the Sentencing Guidelines. The most serious violation is a Grade C, and the Defendant's criminal history category is IV, resulting in an (advisory) guideline range of 6 to 12 months of imprisonment.

4

This is a troubling case.  The Court is very concerned by the Defendant having been dishonest with the Probation Office regarding his employment, albeit so that he could supplement his income to stay current on child support. Obviously the Court is also concerned by the Defendant's actions in drinking and driving, though that matter will be dealt with primarily by the state courts. Further, for a man only 33 years old, the Defendant has a very serious criminal history. Beginning at 18, the Defendant went on a spree of bank robberies, resulting in two federal convictions, the first of which he served 18 months for in BOP custody, and the second being the instant offense.  The latter offense is based on acts that took place shortly after he was released on the first offense, when the Defendant was 20-21 years old. As a result of these convictions, the Defendant has spent nearly all but the last 19 months of his adulthood in the federal penitentiary.

On the other hand, the Court also notes that this is the Defendant's first appearance before the Court, and that, despite how difficult it can be to obtain employment, a stable residence, and otherwise succeed on supervision with the criminal record the defendant has, he has largely been able to do that.  From his demeanor in court, and his actions, there is no question that the Defendant has come a very long way from the person he was at 21.  While these recent events are disturbing, the Defendant's reaction has been mature, and indicates a continuing desire to try to be law abiding, and complete his supervised release successfully.  Though the undersigned knows that there is a risk of failure, I believe that it is appropriate to allow the Defendant one last chance to continue his forward progression.

**ACCORDINGLY IT IS RECOMMENDED** that the Defendant be **CONTINUED** on supervised release, with the following modifications of his conditions of supervision:

1.      The defendant shall refrain from all use of alcohol.

2.      The defendant shall participate in the Location Monitoring Program using the location monitoring technology determined by the probation office, for a period of six months. He shall abide by the rules and regulations of the Participant Agreement Form. During this time, he will remain at his place of residence except for employment and other activities approved in advance by his probation officer. He will maintain a telephone at his place of residence without "caller ID," "call forwarding," "call waiting," "call back/call block," a modem or a portable cordless telephone for the above period as directed by the probation officer. He will wear an electronic monitoring device and follow location monitoring procedures specified by his probation officer. He shall pay all or part of the costs of the program based on the ability to pay as directed by the probation officer

In the event the District Judge adopts this recommendation, the Defendant will have been given a second chance. As mentioned at the hearing, if the Defendant again violates, the Court will have no choice but to recommend the revocation of the Defendant's supervised release. To be successful, the Defendant will have to maintain stable employment, address his substance abuse problems, and—most importantly—take advantage of the support and guidance of the friends and family members who are a positive influence on him. As stated at the hearing. the Court will not tolerate *any* falsity or lack of candor with the Court or the Probation Office. The Defendant stated at the hearing that he understands this, and believes he both can and will do all of these things. While the statement is of some value, the Defendant's actions will be what matters, and what will be necessary for him to succeed.

IV. OBJECTIONS

In writing following the Court stating on the record its recommendation in this case, the parties waived the ten day period in which they may file of objections to this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglas v. United Services' Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*). Accordingly, there will be no objections to this Report and Recommendation, and the matter is ripe for the District Court

to act upon it. The Clerks is ORDERED to mail each Party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of April, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE